UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TAN Investments, Inc., | Case No. 0:23-cv-00400 (KMM/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| American Family Mutual Insurance Company S.I., | |
| Defendant. | |

This case arises from a fire at a home in Brainerd, Minnesota and a subsequent dispute over the amount of insurance payment for the ensuing damage. Pending before the Court are cross-motions for summary judgment. *See* ECF 35, ECF 40. Plaintiff TAN Investments, Inc. ("Plaintiff") seeks an order finding that the fire damage constitutes a total loss requiring that Defendant American Family Mutual Insurance Company ("Defendant") pay Plaintiff at the limit of its insurance policy. *See* ECF 41 (Pl's Mem. in Supp. of S.J.) at 1. Defendant seeks an order compelling an appraisal of the fire damage to determine the amount of loss. *See* ECF 36 (Def's Mem. in Supp. of S.J.) at 1–2. For the reasons that follow, Plaintiff's motion is **DENIED** and Defendant's is **GRANTED** in part and **DENIED** in part.

1

I.     Background

On October 27, 2022, a fire broke out at a home located at 502 North 7th Street in Brainerd, Minnesota (the "Home"). *See* ECF 36 at 5; ECF 41 at 6. The Home, owned by Plaintiff, was covered by a comprehensive homeowner's insurance policy (the "Policy") issued by Defendant. ECF 36 at 3–4; ECF 41 at 3–4. At the time of the fire, the Policy provided a coverage limit of $535,747.68. ECF 36 at 3; ECF 41 at 4. The fire began in a dryer in the basement, before spreading out to cause "smoke, water, and structural damage" throughout "all levels of the interior and exterior of the home." ECF 41 at 6. Defendant immediately began an investigation into the fire, starting with an inspection of the Home. ECF 36 at 5. Defendant's adjuster photographed the Home the day of the fire, revealing obvious damage to interior rooms, with an exterior that appeared largely unaffected. *See* ECF 37-2 (Ex. 2 to Anderson Decl.).

Exemplary photographs are included below:



ECF 37-2 at 15.



*Id.* at 58.

Defendant accepted coverage for the fire. ECF 36 at 8. On November 17, 2022, Defendant produced a repair estimate, reflecting the need for comprehensive cleaning and repairs to the Home, at $584,362.05 (the "First Estimate"). *See* ECF 37-3 (Ex. 3 to the Anderson Decl.). Plaintiff thereafter procured two comprehensive repair estimates of its own—one calculating the cost of restoring the property at $1,059,465.70 and the other calculating the cost at $912,750.00 (respectively, the "Second Estimate" and "Third Estimate"). *See* ECF 41 at 8; ECF 43-4 (Ex. D to the Crancer Decl.); ECF 43-5 (Ex. E to the Crancer Decl.). Because each repair estimate exceeded $535,747.68, Plaintiff, pointing to language on Defendant's website, maintained that the fire had resulted in a "total loss," requiring payment at the policy's coverage limit. *See e.g.*, ECF 41 at 9. Defendant, however, agreed only to payment of an initial "actual cash value" for the damage—calculated at $271,270.82, after factoring in depreciation based on the age and condition of the property before the fire—and conditioned any further payment up to the policy limit on the timely completion of repairs. *See, e.g.*, ECF 36 at 8. At an impasse, Plaintiff initiated this action on February 16, 2023, claiming breach of contract and seeking a declaratory judgment ordering Defendant to pay out the coverage limit. *See* ECF 41 at 10; ECF 1 (Compl.) ¶¶ 25-36. Defendant timely answered. ECF 16 (Answ.). Three months later, the parties sought and received a stay to this litigation, having "agreed to resolve their … dispute through appraisal pursuant to the appraisal provisions in the insurance policy and in Minn. Stat. § 65A.01, subd. 3." ECF 19 (Joint Mot. to Stay) at 1. However, that appraisal did not occur, and on August 24, 2023, the parties informed the Court of their belief that

4

resolution of their dispute "will require adjudication by the Court through motion practice on summary judgment." ECF 24 (Joint Mot. to Lift Stay) at 2. The Parties then sought and received permission to seek early summary judgment (*see* ECF 28), leading to the pending motions before the Court. As noted above, Plaintiff seeks an order declaring that a "total loss" has occurred and requiring payment of the full policy limit. *See generally* ECF 41. Defendant seeks an order compelling appraisal of the damage to the property instead. *See generally* ECF 36.

## II.     Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to

be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). On cross-motions for summary judgment, the Court assesses the facts under each motion separately. *Progressive Preferred Ins. Co. v. Est. of Stover*, 485 F. Supp. 3d 1043. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact" and the movant is entitled to judgment as a matter of law. *Seaworth v. Messerli*, No. 09-cv-3437 (RHK/LIB), 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010), aff'd, 414 F. App'x 882 (8th Cir. 2011) (quoting *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir.2002)).

### III. Analysis

The issues presented in the pending motions amount to a dispute over whether it is presently possible to determine, as a matter of law, that a "total loss" occurred at the Residence. Plaintiff maintains that it is possible—and that the summary judgment record cannot support any conclusion to the contrary. Defendant argues that because the Home is still standing, the Policy and Minnesota law require appraisal. In either event, there is no dispute that a loss occurred, and that the loss is covered, to some extent, by the Policy.

The Court begins with Plaintiff's motion and Defendant's opposition thereto. Plaintiff's position on summary judgment is premised on the assumption that while there may be a dispute over the ultimate cost necessary to repair the Residence, there is no dispute that the cost will exceed the policy limit. ECF 41 at 2; *see also id*. at 12 ("There is

6

no dispute of material fact that the cost of repair for the loss exceeds the policy limit."). This is because the First, Second, and Third Estimates all exceed the policy's $535,747.68 limit. *Id*. at 7–8. And if there is no dispute that the cost of the repairs to the dwelling will exceed the coverage limits, then Plaintiff argues that a "total loss" has necessarily occurred according to a glossary on Defendant's own website, which defines a "total loss" as one in which "your home is totally destroyed *or the cost to repair or rebuild it exceeds the policy limit*." *See id*. at 18–19 (emphasis added); ECF 43-6 at 9. And finally, if a "total loss" has occurred, Plaintiff argues that it is undisputed that the Policy requires full payment at the coverage limit. *Id*. at 16.

Defendant concurs that Minnesota state law requires full payment to the policy limit when a "total loss" occurs. *See, e.g.*, ECF 48 at 6. But any agreement ends there. *First*, Defendant disagrees with Plaintiff's application of the glossary definition of "total loss," and maintains that under Minnesota law, a "total loss" is only a loss that results in the complete destruction of a dwelling, beyond the possibility of repair, and does not automatically occur whenever the cost of repairs exceeds the limit of an insurance policy. *See* ECF 36 at 16–19. *Second*, Defendant disagrees that it is undisputed that the cost of repairs to the Home will exceed the policy limit of $535,747.68. True, Defendant's First Estimate of repair was for $584,362.05, and Defendant does not dispute that Plaintiff's Second and Third Estimates are for even greater amounts. ECF 48 at 3. But Defendant argues that the "cost to repair" referred to in the website definition relied upon by Plaintiff is not determined by the preparation of an estimate, which operates merely as an initial approximation of the ultimate "cost." *See, e.g., id.* at 7–8 (contending that "an estimate and

7

a cost are two different things"). Furthermore, even if an estimate did determine "cost," Defendant points to another estimate (the "Fourth Estimate"), indicating that the dwelling could be restored for as little as $360,358.46 (or roughly $175,000 below the policy limit). *See* ECF 48 at 3–5; ECF 50 (Retka Decl. to Def's Opp. to S.J.); ECF 51 (Pfeiffer Decl. to Def's Opp. to S.J.).

Obviously, the existence of this Fourth Estimate calls into question the central premise of Plaintiff's position on summary judgment, and the great majority of Plaintiff's reply brief addresses its factual and legal significance. Plaintiff argues that the Fourth Estimate is a self-serving ploy to defeat summary judgment and, therefore, cannot create a genuine dispute of material fact. *See* ECF 55 at 5–6 (citing *Frevert v. Ford. Motor Co.*, 614 F.3d 466, 473 (8th Cir. 2010) ("A properly supported motion for summary judgment is not defeated by self-serving affidavits.")). Plaintiff further maintains that Defendant should be estopped from proffering a new estimate that is vastly lower than its initial estimate. *See id*. at 11–12 (arguing that "American Family should be prohibited from substantially altering its original coverage decision merely as a means of escaping summary judgment" and that "[i]f American Family had argued over a year ago that the loss was not total, this case would be substantially different"). But notably, Plaintiff has not moved to strike the Fourth Estimate or the affidavit supporting it, nor is there any argument that the estimate was untimely disclosed pursuant to the operative Scheduling Order governing discovery in this case. *See* ECF 34 (setting a fact discovery deadline of June 30, 2024).

At the hearing, the Court inquired with counsel for Defendant as to the reasons for procuring the Fourth Estimate and the timing of its emergence as an exhibit to Defendant's

8

opposition brief to Plaintiff's motion for summary judgment. Counsel represented that the estimate was obtained during the earlier stay in this case while the parties pursued appraisal. *See also* ECF 62 (Def's Supp. S.J. Ltr.) at 3–4. Counsel further represented that Plaintiff ultimately declined to participate in that appraisal process, eventually leading to the instant motion practice, and that Plaintiff had been aware of the preparation of the Fourth Estimate long before its appearance in the summary judgment record. *See also id*. at 3. In other words, Plaintiff would have every reason to anticipate that the Fourth Estimate would be at issue on summary judgment.

Following the hearing, the Court ultimately provided Plaintiff with the opportunity to supplement its briefing with any case law in support of the proposition that Defendant should be prevented from relying upon the Fourth Estimate in the manner presented here. Plaintiff's subsequent filing offered a renewed argument for why the Court should not consider the Fourth Estimate, but ultimately failed to provide any authority for its position. ECF 61 (Pl's Supp. S.J. Ltr.) at 4 (conceding that "[t]here is no caselaw that Plaintiff is aware of that precludes an insurer from obtaining updated and/or additional estimates in preparation for appraisal").

Having carefully considered the arguments, the Court will consider the Fourth Estimate as part of the summary judgment record. Plaintiff's position against doing so, while robust, is largely based on the estimate's "surprise" timing. But fact discovery remains open, even now, and Plaintiff does not appear to contest Defendant's position that the Fourth Estimate was prepared months before Plaintiff filed its summary judgment motion, with Plaintiff's knowledge, and for an appraisal process that Plaintiff had initially

agreed to participate in. The Court appreciates that Plaintiff is frustrated at the emergence of a new estimate that challenges Plaintiff's theory of this case, but Defendant has maintained from the outset of this litigation that there is a dispute over the cost of repairs necessitating appraisal (*see, e.g.*, ECF 16 at 6 ¶ 3). Ultimately, Plaintiff has failed to persuade the Court that Defendant's production of an initial repair estimate that exceeds the policy limit means that Defendant cannot timely adduce new evidence suggesting otherwise.

Having decided that the Fourth Estimate is part of the summary judgment record, the Court turns to the legal merits of Plaintiff's motion. The Policy contains an appraisal provision as follows:

> **Appraisal**. *If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss*. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. If either party fails to select an appraiser within 20 days, the other party may, upon 5 days written notice to the failing party, make application to have a presiding judge of the district court of the county in which the loss has occurred appoint an appraiser for the failing party. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the insured premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by you and us.

ECF 37-1 at 13 (emphasis added). According to the plain language of this provision, Defendant would be entitled to demand appraisal even in the absence of the Fourth Estimate because the original three estimates already indicate a disagreement over the cost

to repair the Home. But this plain language does not fully control because "[u]nder Minnesota law, the Minnesota Standard Fire Insurance Policy governs fire insurance policies and provides mandatory terms that cannot be omitted, changed or waived." *Pierce v. Am. Fam. Mut. Ins. Co.*, S.I., No. 22-CV-0052 (WMW/DLM), 2023 WL 5155198, at *2 (D. Minn. Aug. 10, 2023) (citing Minn. Stat. § 65A.01, Subd. 3 and *Watson v. United Services Auto. Ass'n*, 566 N.W.2d 683, 690 (Minn. 1997). One such mandatory term defines a right to seek appraisal, but expressly restricts that right in the event of a "total loss" on a building. In relevant part, this reads:

> In case the insured and this company, *except in case of total loss on buildings*, shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand […]

Minn. Stat. § 65A.01, Subd. 3 (emphasis added). In other words, under Minnesota statute, all insurance policies carry a mandatory, non-waivable provision that there is no right to demand appraisal in the event of a "total loss."

Importantly however, a "total loss" within the meaning of the statute does not occur "unless [the building] has been so far destroyed by the fire that no substantial part or portion of it above ground remains in place. . . . " *Auto-Owners Ins. Co. v. Second Chance Investments*, LLC, 827 N.W.2d 766, 770 (Minn. 2013) (quoting *Nw. Mut. Life Ins. v. Rochester German Ins.*, 88 N.W. 265, 267 (Minn. 1901). This definition does not provide for any alternative interpretation of a "total loss" as one in which costs to repair merely exceed policy limits, and courts in this state and district have refused to merge the two

11

together. *See id.* (determining that a "total loss" is a different conclusion than whether the amount of loss or damage meets a certain threshold); *Pierce*, 2023 WL 5155198, at *2 (analyzing the appraisal-exception for total losses under Minn. Stat. § 65A.01, Subd. 3 and noting plaintiff had "not identified any legal authority to support their contention that a 'total loss' of the dwelling can occur simply because the value of their claims exceeded the limits of their policy"). In other words, under Minnesota law, the "total loss" that triggers the statutory exception to the right to demand appraisal is only one that completely destroys a home to the ground.

Ultimately, "[w]hen the parties fail to agree as to whether a loss is total under a policy governed by Minn. Stat. § 65A.01, the district court is the appropriate forum to resolve their dispute." *Pierce*, 2023 WL 5155198, at *2 (quoting *Auto-Owners Ins. Co.*, 827 N.W.2d at 772) (cleaned up). Here, photographs in the summary judgment record (*see supra*; *see generally* ECF 37-2) indisputably reflect that "substantial part[s] and portion[s] remain[] in place" above ground. *Auto-Owners Ins. Co.*, 827 N.W.2d at 770. And none of the estimates for repairing the damage to the Home appear to contemplate demolition, much less suggest it is required. Instead, each provides itemized accountings, at various levels of detail, of the work needed to restore the home to a habitable condition. *See generally* ECF 37-3, ECF 43-4, ECF 43-4, ECF 50-1, ECF 51-1. Simply put, this is not a "total loss" under Minn. Stat. § 65A.01 according to the Minnesota Supreme Court's definition of that term.

What Plaintiff seeks to do, then, is rely on the statutory total-loss exception to the right to demand appraisal, while defining "total loss" based on the glossary definition on

Defendant's website, rather than on Minnesota law interpreting the statute. But the Court declines to determine whether such picking-and-choosing is proper, because the existence of the Fourth Estimate renders the matter moot. Here, Plaintiff has not shown that the home is completely destroyed for a "total loss" under the statute, nor can plaintiff show that it is undisputed that the cost to repair will exceed the policy limit for a "total loss" according to the website glossary.[1] Either way, an issue of material fact precludes summary judgment in Plaintiff's favor.

The Court now turns to Defendant's motion, where the analysis is much simpler. The same factors barring summary judgment for Plaintiff demand it for Defendant. If, as here, there is a dispute about the cost to repair the Home and if, as here, there is not a "total loss" under Minn. Stat. § 65A.01, then by the plain language of the Policy and Minnesota law, Defendant is entitled to demand appraisal. The Court will therefore grant Defendant's motion to the extent it seeks an order mandating appraisal. However, the Court denies Defendant's further request that the Court unilaterally select an umpire from a list of five candidates provided by Defendant. *See* ECF 36 at 19–20. The parties shall first attempt to appoint an umpire, according to the instructions for doing so set forth in the Policy and any applicable statutory requirements, and the Court expects the parties to do so in good faith. The Court will intervene only if required.

### IV.   ORDER

---

[1] For the purposes of this Order only, the Court assumes without deciding that the website glossary identified by Plaintiff defines a "total loss" in this manner. By doing so, the Court does not suggest that Defendant is precluded from later arguing to the contrary or making other arguments related to the glossary definition.

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Plaintiff TAN Investments, Inc.'s Motion for Summary Judgment (ECF 40) is **DENIED**.

2. Defendant American Family Mutual Insurance Company's Motion for Partial Summary Judgment and to Compel Appraisal (ECF 35) is **GRANTED** in part and **DENIED** in part.

3. Defendant's Motion is granted to the extent that appraisal of the Home is ordered, consistent with the requirements of Minn. Stat. § 65A.01 and the Policy's provisions governing appraisal.

4. Defendant's Motion is denied to the extent that the parties are instructed to first attempt to comply with the Policy language setting forth the procedures for the appointment of appraisers and of an umpire. If, within 60 days of this Order, one or both parties fail to appoint an appraiser or if their chosen appraisers cannot agree to the selection of an umpire, then the Parties may inform the Court of their impasse and request further judicial intervention.

Date: July 31, 2024                                                    *s/ Katherine M. Menendez*
                                                                               Katherine M. Menendez
                                                                               United States District Judge